In the

# United States Court of Appeals
## For the Seventh Circuit

No. 16-2892

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROBERT E. FOX,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:15-cr-00025 — **Jane Magnus-Stinson**, *Judge.*

ARGUED OCTOBER 26, 2017 — DECIDED DECEMBER 22, 2017

Before FLAUM, RIPPLE, and MANION, *Circuit Judges.*

MANION, *Circuit Judge.* Robert Fox was convicted of two Hobbs Act robberies. Because he used a firearm to commit the robberies, he was subject to 18 U.S.C. § 924(c)(1)'s mandatory sentencing add-on and was sentenced to 435 months' imprisonment. On appeal, he principally argues that he is entitled to a new trial because the district court denied him his right to be represented by counsel of his choice. We affirm his conviction. The district court was well within its discretion to deny

Fox's morning-of-trial motion for a continuance when there was no indication Fox was particularly close to retaining new counsel.

Fox also raises three other arguments. He admits that the first two, which challenge parts of his conviction, are fore-closed by controlling precedent. He simply wishes to preserve them for Supreme Court review. But the government con-cedes that Fox is correct on his final argument, agreeing that he is entitled to resentencing in light of *Dean v. United States*, 137 S. Ct. 1170 (2017). We agree. *Dean* permits district courts to take into account the sentencing add-on when fashioning a just sentence for the predicate robberies, so the district court may impose a less severe sentence on remand. Therefore, we vacate Fox's sentence and remand for resentencing.

## I. Background

Fox was charged with robbing a White Castle restaurant and a Speedway gas station in southern Indiana. He was in-dicted in federal court under the Hobbs Act in January 2015 and appointed counsel on account of his indigence. Fox had some conflict with his appointed counsel and twice wrote to the district judge—in July and September of 2015—requesting new counsel. But at his November 3 competency hearing, Fox did not object to continued representation by appointed coun-sel and made no representations that he or his family were attempting to retain private counsel. Indeed, his appointed counsel told the court that Fox wanted to resolve the case but wanted more time to prepare. The district court set trial to begin on February 16, 2016.

At the final pre-trial conference on January 20, 2016, Fox requested a continuance and claimed that his family was

speaking with potential new representation. The district judge noted that she expected a superseding indictment to be returned and was inclined to grant a continuance, but she also warned that Fox's case had been pending for a long time, so if he planned to retain new counsel, "that needs to happen." Yet five days later, at the initial hearing on the superseding indictment (which was almost entirely unchanged from the original), Fox reversed himself and indicated that he wanted to proceed on February 16 after all. As such, he declined to exercise his right to have 30 days between the date of the superseding indictment and trial.

On the morning trial was to begin, Fox changed his position again. He requested a continuance, arguing that his family was attempting to retain private counsel. The district judge held a short hearing on the request. Fox's uncle testified that the family had talked to an attorney and was "in the process of trying to get the money," but didn't "have it right now." He also said that Fox's family had been unaware that trial was to start that morning, even though it had been scheduled since early November. Fox's appointed counsel testified that he had spoken to the private attorney and that the latter had no plans to make an appearance in the case. The district judge denied the motion for a continuance, concluding that: (1) Fox had changed his position several times, indicating a desire to proceed less than a month before trial; (2) there was no indication that the private attorney would actually make an appearance; and (3) the lawyers were prepared to proceed and the court had summoned witnesses and jurors to be ready for trial that morning.

Fox proceeded to trial and the jury convicted him of both robberies and the accompanying counts of using a firearm in

connection with crimes of violence.[1] He was sentenced to 435 months' imprisonment due to the mandatory consecutive sentences for using a firearm in connection with the robberies. *See* 18 U.S.C. § 924(c)(1). Fox timely appealed his conviction and sentence.

## II. Analysis

### A. Denial of Motion for a Continuance

Generally "[w]e will reverse the district court's denial of a motion for a continuance only for an abuse of discretion and upon a showing of actual prejudice." *United States v. Shields*, 789 F.3d 733, 748 (7th Cir. 2015). Yet the denial of the right to be represented by counsel of the defendant's choice, assuming the defendant can afford such counsel, is a structural error warranting reversal irrespective of prejudice. *United States v. Sellers*, 645 F.3d 830, 834 (7th Cir. 2011). Nevertheless, district courts still "have broad discretion to grant or deny a continuance to substitute new counsel." *Id.* We will reverse only if the district judge's denial of the motion amounted to "an unreasoning or arbitrary insistence on expeditiousness in the face of a justifiable request for delay." *Id.* (quoting *United States v. Carrera*, 259 F.3d 818, 825 (7th Cir. 2001)).

Our decisions in *Sellers* and *United States v. Sinclair*, 770 F.3d 1148 (7th Cir. 2014), are particularly relevant. The facts in *Sellers* are strange but instructive. The defendant retained an attorney, but for some reason that attorney never filed an appearance and instead designated a "secondary counsel" to represent the defendant. That counsel missed several filing

---

[1] The court declared a mistrial on the fifth count, which charged Fox with being a felon in possession of a firearm.

deadlines and improperly relied on a schedule issued by the magistrate judge that assumed the district judge would grant a continuance. Despite secondary counsel's several representations to the court that the defendant's actual counsel of choice would file an appearance soon, it never happened. So on the Friday before trial, the defendant told the district court that he wished to fire secondary counsel and was in contact with two additional attorneys, one of whom he planned to hire. The court said it was unlikely to grant a continuance, so the defendant reluctantly agreed to continue with secondary counsel. Yet on the morning of trial, the defendant appeared with the secondary counsel *and* his new counsel of choice. The new counsel said he'd file an appearance only if the court granted a continuance to give him time to prepare, but the court denied the request on the ground that it had already made several attempts to accommodate the situation and the promises of original counsel of choice to appear had not come to fruition. The defendant proceeded with secondary counsel "under protest" and was convicted.

We held that the district court unreasonably denied the defendant the right to be represented by his counsel of choice. We determined that the district court had failed to inquire of either counsel "how long substitute counsel would need to prepare adequately for trial," which "evidence[d] a failure to actually balance the right of choice of counsel against the needs of fairness, and suggest[ed] that the district court unreasonably viewed any delay as unacceptable." *Sellers*, 645 F.3d at 837. We also found it troubling that the district court might have denied the motion in part because it was annoyed with the secondary counsel's failure to meet filing deadlines, or possibly annoyed by eleventh-hour continuance motions

more generally. *Id.* at 838. In the end, "legitimate considerations must be balanced against the reasons in support of the motion for a continuance to accommodate new counsel." *Id.* at 838–39. Failure to perform that balancing warranted reversal.

Contrast those facts with *Sinclair*. There, six days before the trial was to begin, the defendant sent a letter to the district court seeking a continuance because his family was planning to retain a private attorney with their tax refund money. The judge held a hearing the day before trial, and the defendant reiterated that as soon as the refund money came through, his family would retain the new attorney. The defendant also stated vague complaints about the federal defender who had represented him in his suppression hearing. The judge denied the continuance request, pointing out that (1) it was made at the last minute and no reason was given for the delay; (2) jurors and witnesses had already been summoned for trial; and (3) the retention of the new attorney was still quite uncertain.

We affirmed the denial of the continuance motion. Particularly, we observed that the defendant's family's plans to hire substitute counsel were "at best preliminary and highly contingent." *Sinclair*, 770 F.3d at 1155. Given that uncertainty, "[t]he preferred lawyer's failure to appear in support of a defendant's continuance motion is a significant factor weighing against granting a continuance." *Id.* at 1156. We also noted that the district judge properly considered the inconvenience to jurors and witnesses, which constitute "real costs for real people (not to mention the sunk public resources)." *Id.* at 1155. In short, the judge's decision was "neither unreasoned nor arbitrary." *Id.* at 1156.

Our case bears little resemblance to the situation in *Sellers*, but is quite similar to *Sinclair*. Like the defendant in *Sinclair*, Fox sought a continuance very near the trial date, had no reason to wait that long, and had an uncertain plan to retain new counsel. Indeed, Fox waited longer than the *Sinclair* defendant to make his motion, and his plan to hire an attorney was even more speculative than was Sinclair's. Fox's uncle didn't specify when the family would have the money together to retain new counsel, the new counsel didn't appear before the court, and there was no guarantee that the new counsel would take the case even if the money did materialize. Moreover, like the district judge in *Sinclair*, the judge here properly recognized that granting a continuance on the morning of trial would impose costs on jurors, witnesses, and the court.

To be sure, Fox had previously sought new counsel several times in the months leading up to trial. These requests, however, were always followed by waffling. Fox changed his mind several times about whether he wanted new counsel, and when he was warned at the final pre-trial hearing to hire new counsel as quickly as possible, he decided a few days later to proceed with the original trial date anyway. The judge heard no more on the subject of new counsel until the morning of trial, so she was entitled to treat the motion as if it were an eleventh-hour request. In effect, that's what it was. *Sinclair* counsels that such a request is properly denied when the plan to hire new counsel is too speculative and no new counsel actually appears before the court.

In *Sellers*, on the other hand, the defendant sought a continuance for the same reason several times in the weeks leading up to trial, that reason was legitimate, and the defendant

showed up the morning of trial with his newly retained coun-
sel. The court denied the motion for a continuance even
though it knew that the defendant's original choice of counsel
had been frustrated, his secondary counsel had performed
poorly, and new counsel was present and ready to take the
case. All of those factors counseled in favor of granting a con-
tinuance. None exists in this case.

We conclude that the district court was well within its dis-
cretion to deny Fox's last-minute motion for a continuance.
The judge properly weighed the reasons for and against
granting relief and reasonably concluded that a continuance
was not warranted. Therefore, we affirm the denial of the mo-
tion. Fox is not entitled to a new trial.

### B. Issues Raised for Preservation

Fox raises two arguments that he admits are foreclosed by
controlling precedent, but seeks to preserve them for Su-
preme Court review. First, he argues that the indictment in
this case was insufficient because it did not refer to the 25-year
mandatory add-on sentence for a second or subsequent con-
viction for using a firearm in a crime of violence. 18 U.S.C.
§ 924(c)(1)(C)(i). Our decision in *United States v. Cardena*, 842
F.3d 959, 1000 (7th Cir. 2016), is conclusive on that point. We
observed there that the Supreme Court's decision in *Al-
mendarez-Torres v. United States*, 523 U.S. 224, 244–47 (1998),
"held that recidivism is not an 'element' of an offense, and so
it need not be found by a jury." Because the recidivism add-
on is not an element of the predicate offense, it did not have
to be included in the indictment. See Fed. R. Crim. P. 7(c)(1)
("The indictment or information must be a plain, concise, and

definite written statement of the essential facts constituting the offense charged ....").[2]

Second, Fox argues that Hobbs Act robberies are not "crimes of violence" under 18 U.S.C. § 924(c)(3)(A). We held otherwise earlier this year in *United States v. Anglin*, 846 F.3d 954, 965 (7th Cir. 2017), vacated on other grounds by 138 S. Ct. 126 (2017). Our sister circuits which have confronted the question agree. *United States v. Gooch*, 850 F.3d 285, 292 (6th Cir. 2017); *United States v. Hill*, 832 F.3d 135, 140–44 (2d Cir. 2016); *In re St. Fleur*, 824 F.3d 1337, 1340 (11th Cir. 2016); *United States v. Howard*, 650 F. App'x 466, 468 (9th Cir. 2016). We reaffirm today that Hobbs Act robberies are crimes of violence under Section 924(c)(3)(A). Therefore, we affirm Fox's conviction.

### C. Sentencing

Although we decline to disturb Fox's conviction, we conclude that a remand for resentencing is appropriate in light of

---

[2] We recognize, as we have before, that "there is some tension between [*Alleyne v. United States*, 133 S. Ct. 2251 (2013)] and *Almendarez-Torres*," but that tension is "for the Supreme Court to resolve." See *United States v. Lomax*, 816 F.3d 468, 477–78 (7th Cir. 2016). *Alleyne* held that any fact that increases the mandatory minimum sentence is an "element" of a crime rather than a "sentencing factor," and therefore must be found by a jury. *Alleyne*, 133 S. Ct. at 2155. And even before *Alleyne*, we had suggested that *Almendarez-Torres* is "vulnerable to being overruled." *See United States v. Elliott*, 703 F.3d 378, 381 n.2 (7th Cir. 2012); *United States v. Browning*, 436 F.3d 780, 782 (7th Cir. 2006). So *Almendarez-Torres* may be on its last legs. *See Shepard v. United States*, 544 U.S. 13, 27 (2005) (Thomas, J., concurring in the judgment) ("*Almendarez-Torres* ... has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that *Almendarez-Torres* was wrongly decided."). But "the continued authority of *Almendarez-Torres* is not for us to decide." *Browning*, 436 F.3d at 782.

*Dean v. United States*, 137 S. Ct. 1170 (2017). The parties agree on this point. *Dean* abrogated prior Seventh Circuit precedent that required district courts to "determine the proper sentence for the [predicate offenses] entirely independently of the section 924(c)(1) add-on." *United States v. Roberson*, 474 F.3d 432, 437 (7th Cir. 2007). In other words, before *Dean*, district courts had to sentence defendants for predicate offenses as if the significant add-on sentence did not exist. Now, in fashioning a just sentence, the court may take into account the mandatory 384-month add-on to Fox's sentence for the two robberies. Because this may result in a less severe sentence, we vacate Fox's sentence and remand the case for resentencing.

### III. Conclusion

For the reasons stated above, we conclude that the district court did not abuse its discretion by denying Fox's motion for a continuance to find new counsel on the morning of trial. Therefore, we AFFIRM his conviction. However, we VACATE Fox's sentence and REMAND this case for resentencing in light of the Supreme Court's decision in *Dean*.